NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3789
_____

UNITED STATES OF AMERICA

v.

KYLE NELSON,
                                            Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 4-10-cr-00231-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2012

Before:  RENDELL, FUENTES, and HARDIMAN, Circuit Judges

(Opinion Filed: June 6, 2012)
_____

OPINION OF THE COURT
_____

After a jury trial, defendant Kyle Nelson was found guilty of possession of

contraband by an inmate in violation of 18 U.S.C. §§ 1791(a)(2), (b)(3), and (d)(1)(B).

Nelson appeals his judgment of conviction, contending that the District Court abused its

discretion in denying his request for a spoliation jury instruction.  Because we agree with

the District Court's sound reasoning in denying that request, we will affirm.

I.

Nelson was incarcerated at the United States Penitentiary in Allenwood, Pennsylvania, while serving a prison term on a 2004 conviction. On the morning of April 15, 2009, Allenwood prison officials selected Nelson's unit, which housed 128 inmates, for a random search for weapons and contraband. Prior to the search, inmates were required to leave their respective cells and the unit. Three inmates, one of whom was Nelson, refused to do so.

In order to remove these inmates from their individual cells, an extraction team was assembled, consisting of seven guards, one of whom operated a hand-held video camera to record the extraction process. After the extraction team failed to gain Nelson's cooperation, pepper gas was released into his cell through the opening under the cell door. After the gas took effect on Nelson, the extraction team unlocked the cell door, entered the cell, and restrained him. During the extraction process, a crudely-made knife, or a "shank," was dislodged from the bottom of Nelson's cell door, and fell to the floor. The guard operating the hand-held video camera filmed the shank on the floor.

In addition to the hand-held camera, there were eight fixed cameras located throughout the unit in which Nelson was housed. Pursuant to prison policy, tapes produced by these cameras are maintained for 30 days and then recorded over, unless there is a request that they be preserved for longer.

Within a month after the incident, an institutional disciplinary proceeding was held. Nelson was informed of his right to request that evidence, including the video from the fixed cameras, be preserved. Nelson did not request that evidence be preserved.

After the hearing, he was found guilty, and received time in a special housing unit as punishment.

On August 12, 2010, Nelson was charged with possession of contraband by an inmate in violation of 18 U.S.C. §§ 1791(a)(2), (b)(3), and (d)(1)(B). In anticipation of trial, Nelson requested production of the video tapes from the fixed cameras located throughout the unit in which Nelson was housed. Nelson was informed that, pursuant to prison policy, the tapes had been recycled 30 days after the incident, and that they no longer existed. On the first day of trial, Nelson requested a spoliation-of-evidence jury instruction regarding the destruction of the video tapes taken from the fixed cameras. Nelson alleged that, by recycling the video tapes, the government destroyed evidence relevant to his defense. Specifically, Nelson alleged that the video tape would have shown a prison guard prying loose the shank from the bottom of Nelson's cell door.

The prison official who viewed the video tapes immediately after the April 15, 2009 incident testified to the District Court that only one fixed video camera would have provided any reasonable view of Nelson's cell door, and the video tape from that camera had been recycled 30 days after the incident. He further pointed out that Nelson did not request preservation of the tapes when given the opportunity. Finally, even had Nelson requested that the video tape from that camera be preserved, it would have been of little assistance due to the camera's angle and distance from Nelson's cell.

After a lengthy and thoughtful review of the evidence and arguments presented by both parties, the District Court denied the requested jury instruction.

## II.[1]

"Spoliation occurs when evidence is destroyed or altered, or when a party fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted). "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

A spoliation instruction is warranted when certain requirements are met. First, it is essential that "the evidence in question be within the party's control." *Id.* Second, "it must appear that there has been an actual suppression or withholding of the evidence." *Id.* However, "no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.*; *see also Bull*, 665 F.3d at 73-74 (discussing requirements for spoliation).

Neither party disputes that the evidence in question—the video tape from the stationary camera with a view of Nelson's door—was within the control of the government. Additionally, the parties do not dispute that the tape was destroyed

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's denial of a request for a spoliation instruction for abuse of discretion. *See United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006).

4

approximately 30 days after the incident. They do dispute, however, the circumstances under which the tape was destroyed.

Nelson contends that the prison's policy to recycle the tapes is simply pretext to destroy any potentially damaging evidence. The District Court, however, correctly concluded that, where there is no showing that the evidence was destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper. *See In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 579 (3d Cir. 1994) (denying spoliation inference in part because there was no evidence that the destroying party did so in order to prevent the adverse party from accessing the evidence). Here, there was no evidence that prison officials destroyed the video tape so as to prevent Nelson from using it in his defense. Rather, the video tape was recycled pursuant to a prison policy that is even-handedly applied.

III.

Accordingly, we conclude that the District Court did not abuse its discretion in denying the spoliation jury instruction, and we will affirm the judgment below.